# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| SHENEQUA SHANTEL SOTO, | |
|    Plaintiff, | NO. 3:16-CV-2263 |
|          v. | (JUDGE CAPUTO) |
| PIKE COUNTY, *et al.*, | |
|    Defendants. | |

## **MEMORANDUM**

Presently before me is the Motion for Partial Summary Judgment (Doc. 19) filed by Plaintiff Shenequa Shantel Soto ("Soto"). Soto was formerly employed by Defendant Pike County (the "County") in its Children and Youth Services agency. After sustaining an injury at work, Soto took medical leave and applied for workers' compensation benefits. Soto returned to work two months later, but her employment was terminated shortly thereafter. Soto challenged her discharge by filing an appeal with the Pennsylvania State Civil Service Commission. One ground raised by Soto was that her termination was motivated by discrimination based on her filing for workers' compensation benefits. The State Civil Service Commission agreed with Soto, finding, *inter alia*, that the County did not advance a legitimate, nondiscriminatory reason for her discharge. The Pennsylvania Commonwealth Court affirmed on appeal. Soto then commenced litigation in this Court against the County, its Commissioners, and its Director of Children and Youth Services asserting claims related to race and medical leave discrimination. Now, invoking the doctrine of collateral estoppel, Soto seeks summary judgment in her favor, arguing that the state agency's decision as reviewed by the Commonwealth Court that the County lacked a legitimate, nondiscriminatory reason to terminate her is entitled to preclusive effect. The motion for partial summary judgment will be denied because the issue decided in the prior proceeding is not identical to the issue presented here.

## I. Background[1]

Soto was employed as a Homemaker by the County in its Children and Youth Services agency ("Children & Youth") from December 1, 2008 until she was terminated on November 12, 2014. (*See* Pl.'s SMF, ¶ 1; Defs.' SMF, ¶ 1). Defendant Shannon Wisniewski ("Wisniewski") served as the Director of Children & Youth at the time Soto was terminated. (*See* Pl.'s SMF, ¶ 4; Defs.' SMF, ¶ 4). Soto is African-American. (*See* Pl.'s SMF, ¶ 2; Defs.' SMF, ¶ 2).

On August 13, 2014, Soto suffered a head injury while at work on a visit to the Pike County Correctional Facility with two Children & Youth child clients. (*See* Pl.'s SMF, ¶ 5; Defs.' SMF, ¶ 5). Soto did not immediately report this incident to her supervisor or Wisniewski because she did not feel any ill effects at first. (*See* Pl.'s SMF, ¶ 6; Defs.' SMF, ¶ 6). After she left the prison, though, Soto developed a headache, so she called a co-worker, Jennifer D'Argenio ("D'Argenio"), to meet her to transport the two child clients. (*See* Pl.'s SMF, ¶ 7; Defs.' SMF, ¶ 7). Soto ultimately pulled her car over and contacted D'Argenio a second time, who in turn notified Wisniewski. (*See* Pl.'s SMF, ¶¶ 8-9; Defs.' SMF, ¶¶ 8-9). 911 was called and Soto was transported to an area hospital where she was diagnosed with a concussion. (*See* Pl.'s SMF, ¶¶ 9-10; Defs.' SMF, ¶¶ 9-10). The same day, Soto completed an incident report and provided that report to Wisniewski. (*See* Pl.'s SMF, ¶¶ 14-15; Defs.' SMF, ¶¶ 14-15).

Soto was granted an approved leave of absence under the FMLA from August 13, 2014 to October 13, 2014. (*See* Pl.'s SMF, ¶ 16; Defs.' SMF, ¶ 16). Soto also filed a claim for workers' compensation benefits for these injuries. (*See id.*). While she was on FMLA leave, Soto received a letter indicating that she was given three (3) employee warning reports: two (2) of the reports related to events that occurred prior

---

[1] The facts relevant to the instant motion are largely undisputed and are taken from the parties' statements of material facts.

2

to Soto taking FMLA leave, while the other report related to Soto's use of County property while on leave. (*See* Pl.'s SMF, ¶¶ 17-20; Defs.' SMF, ¶ 17-20).

Soto returned to work on light duty from her FMLA leave on October 14, 2014. (*See* Pl.'s SMF, ¶ 21; Defs.' SMF, ¶ 21). Two days later, Soto received two (2) additional warning reports for conduct that occurred after returning from FMLA leave. (*See* Pl.'s SMF, ¶¶ 22-24; Defs.' SMF, ¶ 22-24).

On November 12, 2014, a hearing was held before the Pike County Commissioners, *i.e.*, Defendants Matthew Osterberg ("Osterberg"), Richard Caridi ("Caridi"), and Karl Wagner ("Wagner"), to address Soto's employment status with the County. (*See* Pl.'s SMF, ¶ 25; Defs.' SMF, ¶ 25). Wisniewski recommended at the hearing that the Commissioners fire Soto. (*See* Pl.'s SMF, ¶ 26; Defs.' SMF, ¶ 26). At the conclusion of the hearing, the Commissioners unanimously agreed to terminate Soto's employment due to their concern about the safety of the children, a reference to Soto's decision to transport her child clients after she was injured at the prison. (*See* Pl.'s SMF, ¶ 27; Defs.' SMF, ¶ 27). Also that day the County notified Soto by letter that her employment with Children & Youth was terminated effective immediately. (*See* Pl.'s SMF, ¶ 28; Defs.' SMF, ¶ 28).

During her approximately six (6) years of employment with the County, Soto received eight (8) written warnings, a verbal warning, and a one (1) day suspension. (*See* Pl.'s SMF, ¶ 29; Defs.' SMF, ¶ 29). D'Argenio, who is not African-American, received sixteen (16) disciplinary notices during her eight (8) years of employment with Children & Youth. (*See* Pl.'s SMF, ¶¶ 30-31; Defs.' SMF, ¶¶ 30-31). D'Argenio, like Soto, had a hearing before the Commissioners in November 2014 to discuss her employment status, but unlike Soto, D'Argenio was not terminated and instead received a ninety (90) day probationary period. (*See* Pl.'s SMF, ¶¶ 32-34; Defs.' SMF, ¶¶ 32-34).

After she was terminated, Soto filed an appeal with the State Civil Service Commission ("SCSC") alleging, *inter alia*, that she was discriminated against for

3

filing her workers' compensation claim. (*See* Pl.'s SMF, ¶ 35; Defs.' SMF, ¶ 35). Thus, one issue before the SCSC was whether the County's decision to terminate Soto was "motivated by discrimination related to her claim for workers' compensation." (Pl.'s SMF, Ex. "A", 23).[2]

In its Adjudication, the SCSC found that Soto presented sufficient evidence to satisfy her initial burden of establishing a *prima facie* case of discrimination. (*See id*. at 33). The SCSC noted that Soto's claim for workers' compensation was followed closely by the imposition of five (5) warnings, that this number of warnings in such a short period was troubling given the sparse number of warnings before the claim was filed, and that D'Argenio, despite receiving many more warning reports, received much less discipline. (*See id*.).

Because Soto met her burden of showing a *prima facie* case of discrimination, the SCSC next considered whether the County met its burden of producing a "legitimate nondiscriminatory reason for removal . . . ." (*Id*.). After reviewing the record, the SCSC found that the County did not offer legitimate, nondiscriminatory reasons for Soto's termination because: (1) it did not substantiate that Soto transported her child clients unsafely; and (2) the reasons offered for removing Soto but not D'Argenio failed to establish legitimate, nondiscriminatory reasons for removal. (*See id*. at 35). Thus, since Soto made out a *prima facie* case of discrimination which the County failed to rebut, the SCSC concluded that Soto established her claim of discrimination in violation of the Pennsylvania Civil Service Act. (*See id*. at 36). Among other relief, the SCSC ordered that Soto "be reimbursed such wages and emoluments as would have been received between her removal, effective November 12, 2014, and her reinstatement, less wages earned and benefits received, if any, . . ."

---

[2] There was no claim for race discrimination advanced by Soto before the SCSC. (*See* Soto Dep., 42:15-18 (stipulation by Plaintiff's counsel)).

(*Id*.).[3]

The County appealed the decision of the SCSC to the Pennsylvania Commonwealth Court. (*See* Pl.'s SMF, ¶ 51; Defs.' SMF, ¶ 51). The Commonwealth Court affirmed the decision of the SCSC, holding that Soto presented a *prima facie* case of discrimination that "she was terminated due to filing a workers' compensation claim" and that the County "failed to set forth a legitimate, nondiscriminatory reason for terminating Soto." (*See* Pl.'s SMF, Ex. "Q", 13-14).

Soto then commenced this action on November 9, 2016. (*See* Doc. 1, *generally*). Pursuant to a stipulation of the parties, (*see* Doc. 8, *generally*),[4] the following claims remain in this action: (1) race discrimination in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq*., against the County only (Count I); (2) race discrimination in violation of the Pennsylvania Human Relations Act ("PHRA"), 43 P.S. § 951 *et seq*., against all Defendants (Count II); (3) race discrimination in violation of 42 U.S.C. § 1981, through 42 U.S.C. § 1983, against all Defendants (Count III); violation of the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution against all Defendants (Count IV); conspiracy to violate civil rights in violation of 42 U.S.C. § 1985 against all Defendants (Count V); and discrimination in violation of the Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2601 *et seq*., against all Defendants (Count VI).

Soto filed a motion for partial summary judgment against all Defendants on her claims in Counts I-IV and Count VI of the Complaint on November 30, 2017. (*See* Doc. 19, *generally*). In her supporting brief, Soto argues that the SCSC's finding that

---

[3] After the SCSC issued its decision, the County provided Soto with back pay and offered to reinstate her to her prior position. (*See* Soto Dep., 12:8-16:2). At that time, based on her fear of retaliation, Soto deferred her reinstatement. (*See id*. at 15:4-14).

[4] The stipulation also provided for the dismissal of all claims against Children & Youth. (*See* Doc. 8, ¶ 1). The remaining Defendants are the County, Caridi, Osterberg, Wagner, and Wisniewski. (*See id*., *generally*).

5

the County did not have a legitimate, nondiscriminatory reason for terminating her is entitled to preclusive effect in this litigation. (*See* Doc. 21, *generally*). Defendants submitted their opposition to Soto's motion on December 21, 2017. (*See* Docs. 23-24, *generally*). Soto filed a reply brief in further support of her motion on January 4, 2018. (*See* Doc. 25, *generally*). Soto's motion for partial summary judgment is now fully briefed and ripe for disposition.

## II. Discussion

**A.    Legal Standard.**

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A court may grant a motion for summary judgment if, after it considers all probative materials of record, with inferences drawn in favor of the non-moving party, the court is satisfied that there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law." *Chavarriaga v. N.J. Dep't of Corrs.*, 806 F.3d 210, 218 (3d Cir. 2015) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 330, 106 S. Ct. 2548, 2556, 91 L. Ed. 2d 265 (1986); *Brooks v. Kyler*, 204 F.3d 102, 105 n.5 (3d Cir. 2000)). "A fact is 'material' under Rule 56 if its existence or nonexistence might impact the outcome of the suit under the applicable substantive law. A dispute over a material fact is 'genuine' if 'a reasonable jury could return a verdict for the nonmoving party.'" *Santini v. Fuentes*, 795 F.3d 410, 416 (3d Cir. 2015) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986)). "In determining whether the dispute is genuine, the court's function is not to weigh the evidence or to determine the truth of the matter . . . ." *American Eagle Outfitters v. Lyle & Scott Ltd.*, 584 F.3d 587, 581 (3d Cir. 2009) (citing *Anderson*, 477 U.S. at 248-49, 106 S. Ct. 2505).

The moving party bears the initial burden to identify "specific portions of the record that establish the absence of a genuine issue of material fact." *Santini*, 795 F.3d at 416 (citing *Celotex*, 477 U.S. at 323, 106 S. Ct. 2548, 2553). If this burden is

satisfied by the movant, the burden then "shifts to the nonmoving party to go beyond the pleadings and 'come forward with specific facts showing that there is a genuine issue for trial.'" *Id*. (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 538 (1986)). The nonmovant's burden is not satisfied by "simply show[ing] that there is some metaphysical doubt as to the material facts." *Chavarriaga*, 806 F.3d at 218.

**B.     Collateral Estoppel.**

Soto asserts that she is entitled to summary judgment on her race and FMLA discrimination claims "because the finding of the SCSC and Commonwealth Court that the County did not have a legitimate, nondiscriminatory reason for terminating Soto's employment is entitled to preclusive effect under the doctrine of collateral estoppel and is dispositive of Soto's claims[.]" (Doc. 21, 3). The parties do not dispute that Pennsylvania law governs the extent to which the SCSC and Commonwealth Court decisions are entitled to preclusive effect. *See Dici v. Pennsylvania*, 91 F.3d 542, 548 (3d Cir. 1996) ("a federal court in a Title VII action should grant preclusive effect to a state court decision upholding a state administrative agency determination when the state court's decision would be barred by issue preclusion in subsequent actions in that state's own courts.").

In Pennsylvania, collateral estoppel, or issue preclusion, "'forecloses re-litigation in a later action of an issue of fact or law which was actually litigated and which was necessary to the original judgment.'" *Id*. (alteration omitted) (quoting *Hebden v. Workmen's Compensation Appeal Bd.* (*Bethenergy Mines, Inc.*), 534 Pa. 327, 632 A.2d 1302, 1304 (1993)). For collateral estoppel to apply, the party asserting it must show:

> (1) the issue decided in the prior adjudication was identical with the one presented in the later action, (2) there was a final judgment on the merits, (3) the party against whom the plea is asserted was a party or in privity with a party to the prior adjudication, and (4) the party against whom it is asserted has had a full and fair opportunity to litigate the issue in question in a prior action.

*Id.* (quoting *Safeguard Mut. Ins. Co. v. Williams*, 463 Pa. 567, 345 A.2d 664, 668 (Pa. Pa. 1975) (citations omitted); *Shaffer v. Smith*, 543 Pa. 526, 673 A.2d 872, 874 (Pa. 1996)).[5]

Soto contends that the state agency's decision as affirmed by the Pennsylvania Commonwealth Court that the County did not have a legitimate, nondiscriminatory reason to terminate her is entitled to preclusive effect. (*See* Doc. 21, 6-15). As the parties' submissions focus primarily on whether the issue decided in the prior adjudication is identical to that presented here, I do as well.[6] This prong is "'established by showing that the same general legal rules govern both cases and that the facts of both cases are indistinguishable as measured by those rules.'" *Suppan v. Dadonna*, 203 F.3d 228 (3d Cir. 2000) (quoting 18 Charles Alan Wright, Arthur R. Miller, Edward H. Cooper, *Federal Practice & Procedure* § 4425, at 253 (1981)). A "fundamental question [with regard to issue preclusion] is whether the issue has been actually decided by a court in a prior action." *R & J Holding Co. v. Redevelopment Auth. of Cnty. of Montgomery*, 670 F.3d 420, 429 (3d Cir. 2011) (citing *McNeil v. Owens-Corning Fiberglas Corp.*, 545 Pa. 209, 680 A.2d 1145, 1147-48 (Pa. 1996)).

Soto insists that the first criterion is met because: (1) the workers' compensation discrimination claim in the SCSC proceeding and the race and FMLA discrimination

---

[5] "Some Pennsylvania courts state that there are actually five - instead of four - elements to the issue preclusion doctrine. The fifth element requires that the determination of an issue in the prior case must have been 'essential' to the previous judgment." *Witkowski v. Welch*, 173 F.3d 192, 203 n.15 (3d Cir. 1999) (citing *Mellon Bank v. Rafsky*, 535 A.2d 1090, 1093 (Pa. Super. 1987)). As explained by the Third Circuit, "[w]hether there are four or five formal elements to the doctrine is not of consequence . . . [because] the doctrine is essentially the same under either analysis." *Id.*

[6] Individual Defendants, *i.e.*, Caridi, Osterberg, Wagner, and Wisniewski, also dispute that collateral estoppel applies to the claims against them because they were not parties to the SCSC proceeding. (*See* Doc. 24, 14). Because the first prong of the collateral estoppel inquiry is not satisfied for reasons explained in the text, this argument need not be addressed.

8

claims presented here require application of the *McDonnell Douglas*[7] burden-shifting framework; (2) she can easily establish a *prima facie* case of race and FMLA discrimination in this action; and (3) "the issue of whether the County had a legitimate, nondiscriminatory reason to terminate [her] is identical in both the SCSC and federal court proceedings, . . ." (*Id*. at 6-12).

Defendants dispute that the issue decided in the prior adjudication is identical to the one presented here. (*See* Doc. 24, 11-14). Defendants emphasize that whereas the SCSC's decision was based on a finding that the County's decision to terminate Soto was motivated by discrimination for her filing for workers' compensation benefits, the matter *sub judice* implicates race and FMLA discrimination. (*See id*.). This, explains Defendants, shows that Soto only established a *prima facie* case of workers' compensation discrimination and that the issues regarding race and FMLA discrimination were not litigated in the SCSC proceeding, thus preventing application of collateral estoppel here. (*See id*.).

In reply, Soto contends that it is immaterial that the claims in the SCSC proceedings involved workers' compensation discrimination while these proceedings implicate race and FMLA discrimination. (*See* Doc. 25, 4-6). This is so, Soto presses, because "the issue decided by the SCSC and affirmed by the Commonwealth Court - that Defendant County did not have a legitimate, nondiscriminatory reason for [her] termination - is *identical* to the issue presented in this case with respect to [her] claims for race and FMLA discrimination . . . ." (*Id*. at 5) (emphasis in original). Soto

---

[7]     *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973). Under this framework, "a plaintiff first must establish the requisite elements of his claim (called the *prima facie* elements); if so, the 'burden then must shift to the employer to articulate some legitimate, nondiscriminatory reason' for the adverse employment action, and then the plaintiff bears the burden of establishing that the employer's stated reason for the adverse action was an excuse, or pretext, for why the action was actually taken." *Castleberry v. STI Grp.*, 863 F.3d 259, 263 (3d Cir. 2017) (quoting *McDonnell Douglas*, 411 U.S. at 802-04, 93 S. Ct. 1817).

9

reiterates that Defendants' burden under *McDonnell Douglas* to show a legitimate, nondiscriminatory reason for the adverse employment action taken against her is the same here as it was before the SCSC, and, she says, because Defendants failed to meet that burden before, they are barred from re-litigating that issue again here. (*See id.*). Distilled to its essence, Soto's argument is that the issue before the SCSC was whether the County had any legitimate reason for her termination, not merely a reason unrelated to her claim for workers' compensation. Soto's position is unconvincing.

Before the SCSC, Soto contended that she was discriminated against by the County for a "non-merit factor," *i.e.*, her workers' compensation claim, in violation of § 905a[8] of the Pennsylvania Civil Service Act, 71 P.S. § 741.1 *et seq*. The SCSC's Adjudication makes clear that the *prima facie* case of discrimination established by Soto in that proceeding was limited to the filing of her claim for workers' compensation. (*See* Pl.'s SMF, Ex. "A", 31 (evidence of discrimination included that Soto was "employed by the appointing authority for six years and, before she filed her claim for workers' compensation, she had received only three employee-warning reports"; *id*. at 32 (she was treated different that D'Argenio "who did not file a claim for workers' compensation . . . ."; *id*. at 33 (the "claim for workers' compensation was followed by the [County's] decision to impose five warnings, as well as the close temporal proximity between these events, indicates that the [County] may have retaliated against her.")). As a result, to rebut Soto's *prima facie* case of discrimination before the SCSC under the *McDonnell Douglas* framework, the County had to proffer a legitimate reason for her discharge, which, in that context, meant a reason that was not based on her claim for workers' compensation.

---

8     *See* 71 P.S. § 741.905a ("No officer or employe of the Commonwealth shall discriminate against any person in recruitment, examination, appointment, training, promotion, retention or any other personnel action with respect to the classified service because of political or religious opinions or affiliations because of labor union affiliations or because of race, national origin or other non-merit factors.").

10

While the claims in this case are analyzed under the *McDonnell Douglas* burden-shifting framework - just as the claim was before the SCSC - the issue at the second step of the *McDonnell Douglas* inquiry here is not identical. "At the second stage of the *McDonnell Douglas* framework, an employer's reason for discharging an employee 'must be legitimate' or 'nondiscriminatory, which means only that it is not a motive that is illegal under Title VII.'" *Hubbard v. Tyco Integrated Cable Sys., Inc.*, 985 F. Supp. 2d 207, 225 (D.N.H. 2013) (quoting 1 Rodney A. Smolla, *Federal Civil Rights Acts* § 9:40, at 1260 (3d ed. 2013)). "That is, 'courts limit their inquiry regarding an employer's proffered reason to whether that reason is consistent with the statute at issue and do not automatically determine that a decision based on a trait protected by one statute is an illegitimate decision under a statute that protects other traits.'" *Id*. at 225-26 (alterations omitted) (quoting 1 Barbara T. Lindemann & Paul Grossman, *Employment Discrimination Law* 39 (4th ed. 2007)). The Supreme Court has explained in a case under the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq*.:

> We do not mean to suggest that an employer lawfully could fire an employee in order to prevent his pension benefits from vesting. Such conduct is actionable under § 510 of ERISA, as the Court of Appeals rightly found in affirming judgment for respondent under that statute. *See Ingersoll-Rand Co. v. McClendon*, 498 U.S. 133, 142-143, 111 S. Ct. 478, 484-485, 112 L. Ed. 2d 474 (1990). But it would not, without more, violate the ADEA. That law requires the employer to ignore an employee's age (absent a statutory exemption or defense); it does not specify further characteristics that an employer must also ignore. *Although some language in our prior decisions might be read to mean that an employer violates the ADEA whenever its reason for firing an employee is improper in any respect, see McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S. Ct. 1817, 1824, 36 L. Ed.2d 668 (1973) (creating proof framework applicable to ADEA) (employer must have "legitimate, nondiscriminatory reason" for action against employee), *this reading is obviously incorrect. For example, it cannot be true that an employer who fires an older black worker because the worker is black thereby violates the ADEA. The employee's race is an improper reason, but it is improper under Title VII, not the ADEA.*

*Hazen Paper Co. v. Biggins*, 507 U.S. 604, 612-13, 113 S. Ct. 1701, 123 L. Ed. 2d 338

(1993) (emphasis added); *see also* 1 Lex K. Larson, *Employment Discrimination* § 12.09[2], at 12-81 to 12-82 (2d ed. 2012) ("[a]lthough discharge of an employee due to medical reasons may run afoul of other statutes, such employer action is not a Title VII violation if done with an even hand"); *accord Dionne v. Shalala*, 209 F.3d 705, 711 n.12 (8th Cir. 2000) (Lay, J., dissenting) (the Supreme Court in *Hazen Paper* "has noted that articulation of an illegal but true reason, unrelated to the claim at issue, may satisfy an employer's burden"). *Hazen Paper* thus illustrates that a reason for adverse action against an employee found illegitimate or discriminatory under one statute does not mean that same reason is illegitimate under a different statute protecting other traits.

That being the case, the issue in the prior proceedings was only whether the County's proffered reason for discharging Soto was consistent with the prohibition against discrimination based on her filing for workers' compensation , *i.e.*, the "non-merit" factor asserted there. Although the claims here, like the one before the SCSC, are governed by the *McDonnell Douglas* burden-shifting framework, the issue at the second step is different and limited to whether the County's proffered explanation for Soto's discharge is for a reason other than her race or claim for FMLA benefits. *Hazen Paper* clarified this point. *See Hazen Paper*, 507 U.S. at 612, 113 S. Ct. 1701 ("Although some language in our prior decisions might be read to mean that an employer violates the ADEA whenever its reason for firing an employee is improper in any respect, . . . this reading is obviously incorrect. For example, it cannot be true that an employer who fires an older black worker because the worker is black thereby violates the ADEA. The employee's race is an improper reason, but it is improper under Title VII, not the ADEA."). Given this, the issue decided in the prior adjudication is not identical to the one presented in the matter *sub judice*. Soto, therefore, is unable to satisfy her burden of proving the applicability of collateral estoppel to the case at hand.

### III. Conclusion

For the above stated reasons, Soto's motion for partial summary judgment will be denied.

An appropriate order follows.

March 8, 2018  /s/ A. Richard Caputo
Date  A. Richard Caputo
United States District Judge